```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>        **v.**<br><br>MICHAEL JONAS DA SILVA,<br><br>**Defendant.** | **Criminal No.** 23-335 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, Senior District Judge.

Before the Court are two motions filed by the parties: (1) defendant Michael Jonas Da Silva ("Da Silva")'s motion requesting the release of his passport to U.S. Immigration and Customs Enforcement ("ICE") for his deportation (Docket No. 87), and (2) plaintiff United States of America (the "United States" or the "government")'s motion to impose restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663, and amend the judgment.  (Docket No. 92.)  For the reasons set forth below, the Court **GRANTS** both motions.

I. Background

On September 7, 2023, a grand jury indicted Michael Jonas Da Silva ("Da Silva") for conspiracy to commit bank fraud (count one), for producing, using and trafficking counterfeit access devices (count two), and for aggravated identity theft (counts three

through seven).  (Docket No. 14.)  Da Silva entered into a plea agreement on May 21, 2024 and pled guilty to counts two and three of the indictment.  (Docket Nos. 60 and 66.)  The Court sentenced him on August 13, 2024 to ten months as to count two, and twenty-four months as to count three to be served consecutively to each other, and a $100 special monetary assessment for each count.  (Docket No. 79.)  The Court also deferred the determination of restitution until November 13, 2024, ninety days after the sentencing, to provide the parties the time to brief the Court on restitution.  Id.  Da Silva was released on August 15, 2025 to ICE custody - after serving his sentence – and is currently waiting to be deported at the South Florida Detention Facility, i.e., Alligator Alcatraz.  (Docket No. 87.)

On September 2, 2025, Da Silva filed a motion requesting that the Federal Bureau of Investigation ("FBI") release his passport to ICE so that he may be deported to Brazil.  Id.  The government does not oppose the motion.  (Docket No. 89.)

On December 10, 2025, the government requested that the Court amend the judgment and issue a restitution order in the amount of $562,000 payable to Banco Popular of Puerto Rico, the identified victim.  (Docket No. 92 at p. 2.)  Da Silva opposes.  (Docket No. 94.)

**II. Da Silva's Request to Return Passport**

Da Silva requests that the FBI release his passport to ICE so that he may be deported to Brazil.  The government states that the FBI had previously attempted to return Da Silva's properties to no avail, but that the agents will return the passport as soon as Da Silva's attorney provides a point of contact at ICE.  Id.  (Docket No. 89.)

Since there is no dispute that Da Silva's property should be returned, the Court **GRANTS** Da Silva's motion.  The FBI shall make every effort to swiftly identify the appropriate contact person at ICE.  Should Da Silva have the information, he should provide it as soon as possible.

**III. Restitution**

The government requests that the Court amend the judgment and issue a restitution order in the amount of $562,000 payable to Banco Popular of Puerto Rico, the identified victim.  (Docket No. 92 at p. 2.)  Da Silva opposes the request. He argues that the Court does not have jurisdiction to amend the judgment past the ninety-day deadline indicated in the MVRA.  (Docket No. 94 at p. 2.)

Restitution is "a mechanism for making a victim whole by restoring the monetary equivalent of the losses suffered in the consequence of the defendant's criminal activity."  United States

v. Salas-Fernández, 620 F.3d 45, 48 (1st Cir. 2010). Federal courts cannot award restitution without authorization from Congress. United States v. Papagno, 629 F.3d 1093, 1096 (D.C. Cir. 2011). In 1996, Congress enacted the MVRA to "provide those who suffer the consequences of crime with some means of recouping personal and financial losses." United States v. Perry, 360 F.3d 519, 530 (6th Cir. 2004) (quoting H.R. Rep. No. 104-16, at 5 (1995)); see Dolan v. United States, 560 U.S. 605, 612 (2010) (noting that Congress passed the MVRA "to ensure that victims of crime receive full restitution").

Under the MVRA, a defendant convicted of "certain federal crimes - including (as relevant here) those 'committed by fraud or deceit,' 18 U.S.C. § 3663A(c)(1)(A)(ii) - must make restitution to [his] victims[.]" United States v. Carrasquillo-Vilches, 33 F.4th 36, 45, 292 (1st Cir. 2022). Restitution is imposed "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Furthermore, "the [C]ourt may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3).

The Court has ninety days after sentencing to set the restitution amount. 18 U.S.C. § 3664(d)(5); 3 Charles Alan Wright

Criminal No. 23-335 (FAB)                                              5

& Athur R. Miller, Fed. Prac. & Proc. Crim. § 546 (5th ed. 2015). If the Court misses the deadline, however, it still retains the power to order restitution, so long as the Court made clear before the deadline that it would order restitution and left open only the amount. See Dolan, 560 U.S. at 611, 615, 620; Wright & Miller, Fed. Prac. & Proc. Crim. § 546.

Here, the Court has the authority pursuant to the MVRA and the plea agreement to order restitution. The Court indicated in the judgment that Da Silva "must make restitution in accordance with [the MVRA.]" (Docket No. 79.) The Court did not indicate the amount Da Silva would have to pay, but allowed the government until November 13, 2024 to brief the Court on what the restitution amount should be. Id. Although the government failed to provide a restitution amount until now, the Court can amend the judgment "to essentially fill in an amount-related blank in a judgment that made clear that restitution was 'applicable.'" Dolan, 560 U.S. at 620. This is especially true when "the defendant knew about restitution, including the likely amount, well before expiration of the 90-day time limit." Id. at 615. Da Silva knew both that restitution would be ordered, and the likely amount, because he agreed to it. In accordance with the plea agreement, Da Silva agreed to pay restitution in the amount of $562,000 – the amount now requested by the government. See Docket No. 60 at pp. 2-3.

Criminal No. 23-335 (FAB)                                                    6

Additionally, the Presentence Investigation Report stated that Da Silva "shall be ordered" to pay restitution.  (Docket No. 71 at p. 15.)  Da Silva could have avoided "additional delay simply by pointing to [the MVRA] and asking the [C]ourt to grant a timely hearing" on restitution.  Dolan, 560 U.S. at 616.

Accordingly, the Court **GRANTS** the government's motion and amends the judgment to include restitution in the amount of $562,000 payable to Banco Popular of Puerto Rico.  See United States v. Velissaris, 2023 WL 4702049, at *6 (S.D.N.Y. July 24, 2023) ("[W]hen a court orders restitution based on a plea agreement, 'the court can order restitution only in an amount not to exceed that agreed upon by the parties.'").

**IV. Conclusion**

For the reasons stated above, the Court **GRANTS** Da Silva's motion that his passport be released to U.S. Immigration and Customs Enforcement.  (Docket No. 87.)  The Court also **GRANTS** the United States' motion to order restitution and amend the judgment.  (Docket No. 92.)

An amended judgment shall be issued.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 30, 2026.

                                          s/ Francisco A. Besosa
                                          FRANCISCO A. BESOSA
                                          SENIOR UNITED STATES DISTRICT JUDGE